Good morning, Your Honor. Lorraine Howell, I represent the appellant. One thing that I want to point out at the outset is that the respondent had made an argument on page 33 of the brief stating that the appellant had waived the right to discuss and argue on appeal the issue of Section 329 I'm very sorry. Whom do you represent? I represent the appellant, Arthur Lawrence. So you're representing the lawyer, Lawrence? Yes. You're not representing the estate? I'm sorry? You're not representing the debtor? No, that matter has been dismissed long ago. I realize that the only thing left is the attorney's fees, but I just wanted to make sure I understood. Were you counsel? Are you counsel? I can clear that up. When Mr. Lawrence was suspended... Lawrence represented the debtor, right? Yes. And while that was pending, he was suspended for not having passed the MPRE exam. So he brought me in to help out the Windmans, and I was representing them for a little while, as well as was also Mr. Brownstein, the bankruptcy counsel, and I had urged them to dismiss the bankruptcy because doing all these schedules, these monthly schedules, was so strenuous for them, and they were elderly. The issues had to do with litigation. They were involved with some relatives in the state court, and they owned a property with some relatives. They wanted to buy out their relatives. This is far more detailed than I want to know. My question... let me just... so you don't get blindsided. Where does this money come from or go to if Mr. Lawrence doesn't get it? Where does the money come from? Which money are you speaking of? The fees. The fees that are at stake here. Where does that fund... you're claiming fees, and let's say you win here on behalf of Mr. Lawrence. Where does the money come from? The money was already paid to Mr. Lawrence in June of 2007. Okay, I'm sorry. He has to pay it back. Right. And when he pays it back, where does the money go? I know it's not going to be the U.S. trustees that gets it. Well, there's an issue here because... They're like us. They work for a green paycheck. The bankruptcy court ordered him to pay it to the Wayne Winman Group, which were the relatives of the Winmans. But Mrs. Winman paid the fees for Mr. Christ. There was a... the lawyer for the Wayne Winman Group, which were the relatives, was Mr. Christ. He was offered and paid $18,000 in legal fees. So the court made an order that that was to be paid jointly and severally by Winman and Arthur Lawrence. Winman paid that $18,000 before the order was made in between two hearings on Mr. Lawrence's matter. This is way more detailed than I asked for. But the point is that... I'm trying to understand who... I understand the U.S. trustee is here representing a position. Right. But doesn't really have a financial interest in the case. I mean, they're entitled to argue on behalf of the bankruptcy system. But I'm just trying to understand who is inevitably financially affected by this if you should... if Mr. Lawrence has to give over the money. Who gets the money? The order was to pay it to the Wayne Winman Group, but they've been paid. Well, the government suggests that your client would then reimburse the Winmans for that amount. That's their suggestion. But that isn't what the order says. So this goes to the Winmans? Well... I'm just... It's a suggestion by the trustee. Well, my concern is that it seems to me that whoever is getting the money has an interest in this dispute here. And I don't see them represented unless they are by you, in which case it makes it really dicey as to... on a question of split loyalties, right? Pauline Winman, a couple of years ago, wrote a memo that she does not want the money. And that memo was given to the U.S. trustee's office. I still represent Pauline Winman in many other matters. Well, so why doesn't Mr. Lawrence pay the money and then Pauline Winman can pay it back? He doesn't have any money. Mr. Lawrence doesn't have any money. And Mr. Lawrence had... fell down last year and had open-head surgery. And then they had a staph infection, the open-head surgery. He does not have any money. He's receiving SSI income. Okay. Go ahead. What I wanted to point out first was that the U.S. trustee is arguing that we don't have the... that we waive the right to discuss and argue Section 329, that much of the time that Mr. Lawrence spent representing the Winmans was prior to the filing of the bankruptcy and was in connection with or in contemplation of the filing of the bankruptcy. Now, the reason she says that is because... the trustee says yes because she argues it is not in my opening brief at the BAP level. This came up from BAP. I looked at the BAP ruling, and the BAP ruling on several pages affirms the Court's decision about the discouragement that there was evidence to support the discouragement order. On page 7, 10, and 11 of BAP's memorandum. So I just want to be sure that this Court accepts my contention that we have a right to argue the issue of the amount of the fees. And my whole issue is the bias of the Court and not even looking into work that was done for the Winmans prior to the filing of the bankruptcy petition. The only focus that the Court had... Well, there wasn't really anything put in the record about that, was there? I'm sorry? I mean, other than just saying that there was some work done in other proceedings, there wasn't really anything in the record about what it was, what work was done, or anything, was there? Well, Mr. Lawrence filed a complete statement and a declaration. It's in the record. The Bankruptcy Court had found that his billing records weren't credible in any event. Well, the Bankruptcy decided that, but didn't really have any basis. The Bankruptcy rested its whole ruling on, well, the financial schedules weren't completed properly. And there were problems with the financial schedules. But that was because it took a long time for the Winmans to pull together their information. Shouldn't you have gotten it right the second time anyway? I mean, it was the same errors pretty much the second time. Well, again, I guess it was done in haste. I came in after that, and I helped correct all the bankruptcy schedules, and we got them filed. It wasn't only correcting. Some of them just weren't there to boot. Wasn't that right? Well, there were some that weren't there. I spent quite a bit of time with the Winmans to make sure that that was on the record finally. But my issue is that if the court had the right to go back into the first Winman bankruptcy, which was dismissed, and in the Ninth Circuit the rule has been you can't go back into a prior bankruptcy that's been dismissed. Well, that's not my understanding. There's the United States v. Elias case, 188.3.1160, that seems to specifically say you can. I think in that case there were some different facts that were quite different. But whether or not the court can, my issue is if the court can, then it also has to consider work that was done in contemplation of the bankruptcy or in connection with the bankruptcy. Or if it determines that the work was not in contemplation of the bankruptcy or in connection with it, then it doesn't have jurisdiction to decide if those fees are part of the bankruptcy issue. So I really wanted to leave most of my time for rebuttal, but I wanted to make sure that I have the right to argue all of the issues about how much the legal fees were, whether or not the bankruptcy court was biased, whether or not the bankruptcy court really spent any time looking at the benefit to the Winmans. You're not saving much time for rebuttal then. I'll wait now, and I'll give time for rebuttal. Thank you. Okay. Thank you. Your Honor, my name is Katherine Shepchenko. I represent the United States trustee program, and I'm accompanied by my colleague Jill Sturtevant. This case has two distinct issues. First, the discretion of the bankruptcy court to reduce Mr. Lawrence's fees, and secondly, the procedure by which it did so. The record is unambiguous that Mr. Lawrence did not provide value to his clients. He filed two Chapter 11 cases on their behalf. The first one was dismissed because he failed to advise them that they needed to obtain credit counseling. The second one was dismissed after four months as a bad faith filing because Mr. Lawrence had advised them that it would be proper to file bankruptcy simply for the purposes of stalling state court litigation. As a result of Mr. Lawrence's advice, the Winmans received no benefit from the bankruptcy system. They had to pay attorney's fees to the state court litigants. They had to hire Ms. Howell at an additional expense to them. So they were certainly worse off after they engaged Mr. Lawrence, and therefore the bankruptcy court did not abuse its discretion. Why does the bankruptcy court have authority to? Isn't that between the Winmans and Mr. Lawrence? I mean, if the money comes out of the state, then of course the bankruptcy judge has to be like a hawk, right? Making sure that the estate doesn't get bilked. But if this is between the debtor and their lawyer, how does the bankruptcy court get the authority to second-guess that? Under 11 U.S.C. 329, Your Honor, an attorney has to disclose all fees that they have received from the debtor, whether or not they are seeking authorization from the court for those fees. And in Section 329, the bankruptcy court has to review and determine that those fees are reasonable. And the reason for this is that one of the responsibilities of the bankruptcy court is to monitor the behavior of attorneys and make sure that overreaching attorneys are not taking advantage of debtors who are in a particularly vulnerable situation. Even when the fees don't come out of the state? Even when the fees don't come out of the estate, because what the bankruptcy court is trying to do is to look at the equities of the situation and to maintain the integrity, as Your Honor has mentioned, of the bankruptcy system. Well, I didn't mention that. What I said is that the bankruptcy judge, an estate is sort of a helpless thing. Yes. It can get pillaged by all sorts of, not only by creditors, but also by various professionals who provide a service estate. So one of the jobs that the U.S. Attorney's Office does in working with the bankruptcy court is to make sure that what the estate is being charged gets fair value for what money is being taken out of the estate. And that's perfectly understandable. But let's say you have a debtor who says, I really want the best bankruptcy lawyer I can get, and I've got a rich Aunt Martha who's going to pay extra money to the lawyer. I've never seen a case where the bankruptcy court regulates or can decide the fares or fees when they don't come out of the estate, if the fees come out of some other source. You may be right, I've just never seen it. Well, I suppose it's rare, but I wish we all had great Aunt Martha's that would pay our bills. Well, that's why I asked opposing counsel where the money would go to. And maybe I don't understand quite what she said, but we'll understand that this is money that's going between the debtors and their lawyer. And is that correct? Is that your understanding? Let's say Mr. Lawrence had the money and was able to profit up. Who would get the cash? Well, as opposing counsel pointed out, under the current order, it would go to the Windman Group. Opposing counsel... I'm sorry, who is the Windman Group? Excuse me. I'm still focused on the fees. The fees, yes. The bankruptcy judge, in her fee disgorgement order, ordered Mr. Lawrence to pay the state court litigants because he was jointly and separately liable for the attorney's fees she assessed because of the bad faith planning. In bankruptcy courts, there are creditors? They were... In bankruptcy terms, what are the creditors? They were parties that came in and objected to the bankruptcy because they asserted, and the bankruptcy court found, that the bankruptcy was filed solely for the purposes of stymying the state court litigation that they were involved in over property. The 18-5 has already been paid, and then the appellant's claim, among other things, is it's going to be a double payment if the 8500 goes there since there's no 18-5 to be paid anymore. That's part of their claim, isn't it? That is certainly part of their claim. I am not aware that there is proof in the record that that has happened, but if it is in fact... It doesn't matter about it happening. It's a question of if the order is affirmed to the bankruptcy court, then there's 8500 to go to the Widman group when they've already been paid the 18-5. Isn't that it? Yes. So then the proper thing to do would be to file a motion expressing that, producing the documentation, and then under 11 U.S.C. 1329, the money would go back to Mrs. Widman, and as the BAP pointed out, she is free to do with that money. So then where does it go? It goes back to Mrs. Widman. It's a reimbursement because she... No, no. The appellant claims that Mrs. Widman has sworn off the money, so then where does it go next? If that's in fact true, there's nothing in the record to show that, then Mrs. Widman is free to do with her money what she will. Okay. She can give it back. Okay, but if I understood the exchange with Judge Pearsall, what I thought I heard you say is that the money does in fact go to the state. It just so happens that the creditors in this case have already been paid off, so the surplus goes back to the debtor. Yeah. Another unusual circumstance. The poor case, yes. So it does go to the state. This was not a direct... Okay. Okay. So I now understand how the bankruptcy court has jurisdiction to... Yes. All right. I apologize if I wasn't clear the first time. I probably wasn't clear in my question, but okay. I think I get it. So our major concern here is protecting the integrity of the bankruptcy system and making sure that lawyers do not file in one case, get it dismissed, then file another case and use that as an excuse to screen themselves, to immunize themselves from the scrutiny of the bankruptcy court of the value of their services as is provided for under Title XI. And in terms of this particular case, we believe that the bankruptcy court had jurisdiction to act as it did, that is to disgorge fees in two cases, one after a case had been closed in an open case, because there are three particular elements that are present here. First, the bankruptcy court had a vehicle in which to act, which is the second case. Secondly, because of the issues, attorneys' fees which lie at the core of the bankruptcy court's jurisdiction, and three, because we had mirror image cases. We had the same parties. We had the same agreed debtor, the same lawyer, the same creditor, the same court, and even the same judge. And, in fact, the two cases even overlapped for one day. So under these particular circumstances, we believe that the bankruptcy court had the power to act as it did, that it did not abuse its discretion in limiting Mr. Lawrence's fees. I realize you are out for the principal. I'm not being sarcastic.  But from what I understand from opposing counsel, as a practical matter, there's no blood to squeeze out of this stuff. Mr. Lawrence hasn't got the money. Is the case moot? The case is not moot. We don't know when Mr. Lawrence could get some money. Maybe he plays the lottery. And, yes, the principal to us is very important because this goes to the core of the bankruptcy court's ability to monitor attorneys before it and to prevent them from overreaching and taking advantage of debtors that may be vulnerable. So if you prevail, you'll be getting a judgment against Mr. Lawrence for that amount, and then he could collect or not? That would be decisions that my colleague would be taking. I see my time has expired. If there are no more questions. Thank you. We'll give a couple of minutes for rebuttal. We have a tiny bit of time left, but we'll make it two minutes because I asked a lot of questions of us. I'd like to clear up a couple of things regarding whether or not the $18,000 was paid. First of all, it is in the records in the stipulation that was approved by Judge Hatter in the district court when the parties appealed the bad faith finding by the judge. Secondly, I was present when it was paid, so you can swear me under oath and I can testify it was paid. With regard to having to make a motion to have the discouragement fees paid to someone other than the court order says, Mr. Christ, who is the attorney for the state litigants, charges $500 an hour, such a motion would probably cost more than the $8,000, and it would really be rather frivolous, but that would be the procedure required. The Windmans don't want anything more to do with any of this. They've settled their matters. We settled those cases three months after this discouragement order was made, so that's all history as far as they're concerned. Now, my concern still is that if the court has the right to go back to Windman 1 and take up an issue about attorney's fees that were paid regarding the first bankruptcy, then the court has to also consider whether or not some of that, some of the benefit to the clients prior to the filing of the bankruptcy. This court didn't consider that at all. Didn't even look at what benefit there might have been to the clients having a lawyer to counsel with prior to filing a bankruptcy. She looked only at the financial schedules, And if the court does not look at the prior work in contemplation of Well, considering what a shabby filing it was, there must not have been too much consultation ahead of time. Well, the consultation had a great deal to do with what the circumstances were that caused them to file. They were involved in litigation with relatives, and the litigation law firm had signed a stipulation for them to go into binding arbitration. They didn't want binding arbitration. There was an imminent trial to take place. They weren't prepared. They didn't want the law firm to continue representing them. They had a tremendous conflict of interest with them. And they had to do something quickly, because in the Superior Court it's very hard to get a continuation of a trial when it went on for quite some time. So this was their problem. They had to do something. And in order to settle with the litigants, the litigants wanted $450,000 cash to sell their interest to Pauline and Marie Windman, who owned 60% of the property since 1970s. And it was a purchase in action. If they brought in a referee to sell the property, the Windmans would have had tremendous capital gains tax problems. So all of these issues were being discussed, and they needed to have a lawyer to talk to about real estate experience, which Mr. Lawrence did. He was referred to them by a friend, and they had counseling. I've been a client, and I know what it means to have counseling with a lawyer, but this bankruptcy court wasn't interested in whether there was a benefit to these clients in counseling about all of these issues that prompted them to then file a chapter to stop everything. They didn't have $450,000 cash, and to deal with it. Thank you. Thank you. Thank you. The case is argued. We'll stand for a minute. We'll next hear an argument in Balderas v. Countrywide Bank.
judges: Piersol, Kozinski, Ikuta